IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JESSE KORMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  1:25-cv-2076 (LMB/WBP) |
| | ) |
| FREE BEACON LLC, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

This civil action arises from defendant *The Washington Free Beacon*'s ("*Free Beacon*")

use of plaintiff Jesse Korman's ("Korman") professional photograph of Representative

Alexandria Ocasio-Cortez ("AOC").  Korman alleges that *Free Beacon*, a conservative political

journalism website, knowingly copied and displayed Korman's photograph in an online

publication without his authorization in violation of the federal Copyright Act, 17 U.S.C. § 106;

however, *Free Beacon* asserts that its inclusion of the photograph in an article criticizing AOC's

politics is protected by the doctrine of fair use.  Before the Court is *Free Beacon*'s Motion to

Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which has been fully briefed by

the parties.  For the reasons stated in open court following oral argument, and for the reasons

more fully explained below, the Court has granted *Free Beacon*'s Motion to Dismiss.

I.

The following facts are derived from the Complaint and a series of three related articles

that were published by *Free Beacon* in 2021.  At this stage of the litigation, the Court must

accept all facts contained within the Complaint as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).  Additionally, the Court may take judicial notice of the three articles because they are

integral to the Complaint and neither party disputes that they are authentic.  Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Lokhova v. Halper, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020).

Korman is a professional photographer who has invested significant time and money into building his portfolio.  [Dkt. No. 1] ("Compl.") ¶¶ 11–12.  His photographs are original, creative works, and he has obtained several active and valid copyright registrations for his works from the U.S. Copyright Office.  Id. ¶¶ 13–14.  On October 21, 2017, Korman published a photograph of AOC, which is featured below.  Id. ¶ 15.



In creating the photograph, Korman "personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination for the creation of the work." Id. ¶ 16. Additionally, he "created the Photograph with the intention of it being used commercially and for the purpose of display and/or public distribution." Id. ¶ 18. On February 8, 2019, Korman registered the photograph with the U.S. Copyright Office under Registration No. VA 2-139-828. Id. ¶ 17.

In 2021, *Free Beacon* published a series of three articles criticizing AOC's parking habits and highlighting a contradiction between AOC's lifestyle and her espoused political views. First, on May 19, 2021, *Free Beacon* published an article titled, "SPOTTED: Socialist AOC's Tesla Parked Illegally Outside Whole Foods in Posh DC Neighborhood."[1] The article reported that AOC "parked illegally" outside of Whole Foods, suggesting that she, "[l]ike most celebrities," is "willing[] to break the rules for her own convenience." The article also juxtaposed AOC's "ongoing quest to transform the United States into a socialist paradise" with her owning an expensive Tesla vehicle, living in a luxury apartment building, and shopping at Whole Foods, an "élite grocery establishment." The article stated that, although AOC has criticized Tesla and one of her policy advisers "wants to abolish billionaires," "the congresswoman appears to enjoy consuming the products of their capitalist ingenuity." At the end of the article, the author somewhat unrelatedly mentioned that "AOC remains one of the foremost advocates of ending U.S. aid to Israel and slapping sanctions on the Jewish state."

---

[1] Available at: https://freebeacon.com/author/stiles/politics/socialist-tesla-whole-foods/. *Free Beacon* argues that the Court may take judicial notice of this article, [Dkt. No. 13] at 3 n.1, and Korman does not dispute that proposition.

3

On July 21, 2021, *Free Beacon* published a second article titled, "CAUGHT ON VIDEO: AOC Illegally Parks Tesla Near Whole Foods AGAIN."[2]  The article reported that AOC has "continue[d] to defy Washington D.C., traffic regulations by illegally parking her Tesla near the Whole Foods in her posh neighborhood."  It also stated:

> Most journalistic organizations do not believe public officials should be held accountable for their actions or called out for attempting to evade the everyday regulations by which normal citizens are forced to abide, especially when that public official is a prominent Democrat.  The *Free Beacon* respectfully disagrees.
>
> . . .
>
> Ocasio-Cortez, who claims to oppose billionaires such as Elon Musk and Jeff Bezos, appears to be an avid consumer of billionaire-owned products and services. She remains one of the most controversial (and most online) politicians in Congress, best known for her enthusiastic support for U.S. sanctions against Israel.

On August 3, 2021, *Free Beacon* published a third article titled, "Illegal Parking Icon AOC Is Also Reckless Driver, New Photo Indicates."[3]  The article labeled AOC as a "socialist firebrand" and reported that she "could also be a reckless driver" based on "[n]ew photo evidence [that] reveals extensive damage to the front bumper of AOC's luxury vehicle, which retails for as much as $59,000."  The article illustrated that point by featuring a cut-out of Korman's photograph of AOC next to a photograph of her Tesla vehicle with alleged damage:

---

[2] Available at: https://freebeacon.com/author/stiles/politics/illegal-testa-parking-scandal/. *Free Beacon* argues that the Court may take judicial notice of this article, [Dkt. No. 13] at 3 n.1, and Korman does not dispute that proposition.

[3] Available at: https://web.archive.org/web/20210803214205/https:/freebeacon.com/satire/ocasio-cortez-reckless-driver/. *Free Beacon* argues that the Court may take judicial notice of this article, [Dkt. No. 13] at 3 n.1, and Korman does not dispute that proposition.



The article described the image of the car as having been taken in front of the Capitol Building, where AOC was "cavort[ing] with left-wing activists protesting President Joe Biden's unwillingness to extend the moratorium on evictions, an emergency measure passed in response to the COVID-19 pandemic that expired on July 31." The article cross-referenced the related May 2021 and July 2021 articles, neither of which contained the allegedly infringing image.

Korman first became aware of the alleged infringement on May 29, 2025. Compl. ¶ 30. The Complaint alleges that *Free Beacon* "has received a financial benefit directly attributable" to its use of Korman's photograph and that the infringement "increased traffic" on *Free Beacon*'s website, allowing the company "to realize an increase in its business revenue." Id. ¶¶ 39–40. The Complaint also claims that *Free Beacon*'s use of the photograph "harmed the actual market" for the work. Id. ¶ 43. On June 13, 2025, Korman served a letter on *Free Beacon* regarding the alleged infringement, but *Free Beacon* allegedly continued to infringe on Korman's work. Id. ¶¶ 45, 47. As a result of this conduct, the Complaint alleges that Korman has been "substantially harmed." Id. ¶ 48.

On November 18, 2025, Korman filed a one-count Complaint against *Free Beacon*, claiming that its use of the photograph of AOC violated the federal Copyright Act. Id. ¶ 53. The Complaint seeks damages, disgorgement of profits attributable to the infringement, an order enjoining *Free Beacon* from any infringing use of Korman's works, and attorney's fees. *Free Beacon* responded by filing the Motion to Dismiss at issue. [Dkt. No. 12].

## II.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and take the facts asserted in the complaint as true. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 12(b)(6) requires that a complaint be dismissed when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must allege enough facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Iqbal, 556 U.S. at 679).

## III.

Under 17 U.S.C. § 106, "the owner of the copyright" has the "exclusive right" to publish, copy, reproduce, and distribute his work. See Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 546 (1985) (describing a copyright owner's "bundle of exclusive rights"). To state a claim for copyright infringement, a plaintiff need allege only that he owns a valid copyright and that the defendant copied original elements of the copyrighted work. Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 428 (4th Cir. 2013) (citation omitted).

6

But there is a statutory exception to the protections provided to copyright holders: the doctrine of fair use. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 598 U.S. 508, 526–27 (2023). Specifically, the Copyright Act provides that "the fair use of a copyrighted work, including such use by reproduction in copies . . . , for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. In determining whether a particular use is fair, courts consider four statutory factors:

> (1) the purpose and character of the use, including whether such use is of commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Id. These four factors "must be 'explored, and the results weighed together, in light of the purposes of copyright.'" Philpot v. Indep. J. Rev., 92 F.4th 252, 258–59 (4th Cir. 2024) (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 (1994)). Although the factors require a "case-by-case analysis," Campbell, 510 U.S. at 577, Fourth Circuit "precedents have placed primary focus on the first factor," Bouchat v. Balt. Ravens Ltd. P'ship, 737 F.3d 932, 937 (4th Cir. 2013) (Bouchat II), while the Supreme Court has stated that the fourth factor is considered "undoubtedly the single most important element of fair use," Harper & Row, 471 U.S. at 566.

Here, *Free Beacon* does not dispute that Korman has alleged that he owns a valid copyright or that *Free Beacon* copied Korman's work. Rather, *Free Beacon* claims that its use of Korman's photograph was fair. To be sure, the parties do not dispute that fair use can be adjudicated at the motion-to-dismiss stage before the parties have engaged in discovery. See Arrow Prods., Ltd. v. Weinstein Co., 44 F. Supp. 3d 359, 367–68 (S.D.N.Y. 2014). Of course, because fair use is an affirmative defense for which the defendant bears the burden of proof, the

plaintiff "need not plead facts in [his] complaint that <u>disprove</u> fair use in order to survive a motion to dismiss." <u>Garner v. Higgins</u>, No. 7:14-cv-461, 2015 WL 574352, at *3 (W.D. Va. Feb. 11, 2015) (emphasis in original). But so long as the defendant "conclusively establish[es] all essential elements of that defense," <u>Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.</u>, 673 F.3d 294, 299 (4th Cir. 2012), the Court may adjudicate fair use at an early stage of the litigation. This is especially true given that, as *Free Beacon* persuasively argues, [Dkt. No. 13] at 6, the doctrine of fair use "serves as a necessary 'First Amendment safeguard[],'" <u>Bouchat II</u>, 737 F.3d at 937 (quoting <u>Eldred v. Ashcroft</u>, 537 U.S. 186, 219 (2003)), that prevents protracted litigation from having a substantial chilling effect on protected speech. For these reasons, the Court has found that it is appropriate to adjudicate fair use before discovery.

A.

The first fair use factor, which focuses on "the purposes and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes," 17 U.S.C. § 107(1), involves consideration of "the reasons for, and nature of, the copier's use of an original work," <u>Warhol</u>, 598 U.S. at 527–28. The central focus of this factor is "whether the new work merely supersedes the objects of the original creation . . . or instead adds something new, with a further purpose or different character." <u>Id.</u> at 528 (cleaned up). Put differently, this factor relates to "copyright's bête noire," namely, the alleged infringer's "use of an original work to achieve a purpose that is the same as, or highly similar to, that of the original work." <u>Id.</u>

In analyzing this factor, courts consider "whether the new work is transformative, and the extent to which the use serves a commercial purpose." <u>Bouchat II</u>, 737 F.3d at 939 (citations omitted); <u>see</u> <u>Warhol</u>, 598 U.S. at 532 ("[T]he first fair use factor considers whether the use of a copyrighted work has a further purpose or different character, which is a matter of degree, and

8

the degree of difference must be balanced against the commercial nature of the use."). As a general rule, if the use of an original work is transformative and does not serve a commercial purpose, the first factor is likely to weigh in favor of fair use. Bouchat II, 737 F.3d at 939, 941. But "[i]f an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use." Warhol, 598 U.S. at 532–33.

"Transformative works rarely violate copyright protections because 'the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works.'" Bouchat II, 737 F.3d at 939 (quoting Campbell, 510 U.S. at 579). A work is transformative when it "employs the quoted matter in a different manner or for a different purpose from the original." A.V. ex rel. Vanderhye v. iParadigms, LLC, 562 F.3d 630, 638 (4th Cir. 2009) (cleaned up). "The use of a copyrighted work need not alter or augment the work to be transformative" as long as the new use is "transformative in function or purpose." Id. at 639. Of course, courts must be careful to avoid adopting an "overbroad concept of transformative use," which could undermine a copyright owner's exclusive right to prepare derivative works. Warhol, 598 U.S. at 529. But if a new use "has a purpose or character different from the original," the new work is said to be transformative.[4] Id.

Free Beacon argues that its use of the photograph of AOC is transformative because it used the image as part of its criticism of AOC's politics. According to Free Beacon, the series of three articles, only the last of which is at issue, contrast AOC's political convictions—"as

---

[4] Korman characterizes Warhol as having held "that a particularly compelling justification must be offered for the copying," [Dkt. No. 18] at 11; however, that characterization misstates Warhol's focus. Warhol does not instruct courts to analyze a defendant's justification for copying an original work. Rather, Warhol instructs courts to evaluate whether the allegedly infringing work serves the same purpose as the original work. 598 U.S. at 528.

somebody representing the everyday man and woman"—with behavior that *Free Beacon* describes as inconsistent with that image by highlighting her "driving a luxury vehicle, living in an expensive apartment complex, and repeatedly breaking [D.C.] parking rules apparently without repercussion." [Dkt. No. 13] at 19. Korman's photograph is included in the third article of the series and "is part and parcel" of *Free Beacon*'s "critique" of AOC's politics. [Dkt. No. 19] at 9. *Free Beacon* explains that the photograph "forms the basis of [its] commentary" because the photograph depicts AOC as a "wealth[y] and powerful" individual "who would drive a nice car and live in a luxury apartment complex," which "is exactly the image that [AOC] has sought to distance herself from." [Dkt. No. 13] at 9. In other words, *Free Beacon* argues that it "has essentially taken the very essence of [Korman's] Photograph and turned it on its head." Id.

Korman responds by asserting that *Free Beacon*'s August 3, 2021 article fails to juxtapose AOC's everyday-woman political image with a someone living a luxury lifestyle. [Dkt. No. 18] at 12. According to Korman, the article, which consists of four sentences, "only reports that AOC purportedly enjoys illegal parking . . . and that she may also be a reckless driver." Id. "The article does not discuss AOC's politics or why the Photograph . . . is allegedly at odds with her politics." Id.

As *Free Beacon* responds, Korman's argument is unpersuasive because it fails to recognize that the determination of whether a work is transformative is "an open-ended and context-sensitive inquiry." Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013) (citing Campbell, 510 U.S. at 577–78). Specifically, the article that contains the allegedly infringing image must be viewed in the context of the two preceding articles criticizing AOC, both of which were cross-referenced in the third article. When viewed in context, *Free Beacon* clearly has used the

10

photograph of AOC in connection with, and to facilitate, its criticism of AOC. The first article, which was published in May 2021, painted AOC as hypocritical:

> The significance of the parking scandal remains to be seen. At the very least, it could undermine Ocasio-Cortez's credibility in her ongoing quest to transform the United States into a socialist paradise. Her policy adviser, Dan Riffle, wants to abolish billionaires, yet the congresswoman appears to enjoy consuming the products of their capitalist ingenuity. Tesla, for example, is run by a billionaire (Elon Musk), as is Whole Foods (Jeff Bezos).[5]

The second article, which was published in July 2021, espoused a belief that "public officials should be held accountable for their actions" and must be "called out for attempting to evade the everyday regulations by which normal citizens are forced to abide, especially when that public official is a prominent Democrat."[6] The third article, which contained the allegedly infringing image, labeled AOC as a "socialist firebrand who enjoys illegally parking her expensive Tesla near the Whole Foods in Washington, D.C."[7]

An "objective inquiry into what use was made, i.e., what [*Free Beacon*] d[id] with the original work," Warhol, 598 U.S. at 545, confirms that its use of the photograph was transformative. Korman took the professional headshot of AOC with a goal of portraying AOC in the best possible light. See Compl. ¶ 16 (explaining that Korman "selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work"). His website identifies himself as "the campaign photographer for [AOC] during her historic

---

[5] Available at: https://freebeacon.com/author/stiles/politics/socialist-tesla-whole-foods/.

[6] Available at: https://freebeacon.com/author/stiles/politics/illegal-testa-parking-scandal/.

[7] Available at: https://web.archive.org/web/20210803214205/https:/freebeacon.com/satire/ocasio-cortez-reckless-driver/.

congressional run,"[8] and AOC used the photograph in her campaign as a tool to market herself in a positive light with the goal of garnering votes.  The image below exemplifies how AOC used Korman's photograph:[9]



By contrast, *Free Beacon* used the photograph as part of its criticism of, and commentary on, AOC's politics and lifestyle.  *Free Beacon*'s purpose in including the photograph of AOC in its article "was to <u>negatively</u> portray the Congresswoman" and depict her as the type of wealthy individual who would normally be the subject of her criticism.  [Dkt. No. 13] at 9 (emphasis in original).  These are plainly transformative uses.

---

[8] Available at: https://www.jessekorman.com/info.  *Free Beacon* argues that the Court may take judicial notice of Korman's website, [Dkt. No. 19] at 8, and Korman does not dispute that proposition.

[9] Available at: https://www.fastcompany.com/90180561/how-the-alexandria-ocasio-cortez-campaign-got-its-powerful-design.  *Free Beacon* argues that the Court may take judicial notice of this photograph, [Dkt. No. 13] at 9 n.7, and Korman does not dispute that proposition.

The conclusion that *Free Beacon*'s use of Korman's photograph was transformative is well-supported by the case law cited by the parties. First, Dhillon v. Does 1–10 involved a professional headshot of a political candidate, which was used "as a tool to positively market" her candidacy. No. 3:13-cv-1465, 2014 WL 722592, at *5 (N.D. Cal. Feb. 25, 2014). The court found a website's use of the headshot to be transformative because the website "used the headshot photo as part of its criticism of, and commentary on, the plaintiff's politics." Id. Second, Núñez v. Caribbean International News Corp. involved professional nude photographs of Joyce Giraud ("Giraud") that were part of her modeling portfolio. 235 F.3d 18, 21 (1st Cir. 2000). The First Circuit found a newspaper's use of the photographs to be transformative because the newspaper used the images for an article about whether the nude photographs were appropriate for Giraud, who was Miss Puerto Rico Universe 1997. Id. at 21–23. The court emphasized that the photographs "were originally intended to appear in modeling portfolios, not in the newspaper." Id. at 23. Finally, Philpot v. Media Research Center Inc. involved photos of Kenny Chesney and Kid Rock, which were intended to "depict the musicians in concert." 279 F. Supp. 3d 708, 715 (E.D. Va. 2018). The court held that a website's use of the images to "inform[] citizens about pro-life celebrities and conservative celebrities running for public office" was transformative because the photographer "in no way had this purpose in mind . . . at the time he took the photographs." Id.

Korman attempts to analogize to two cases, neither of which mirror the facts at issue here. First, Korman claims that Warhol compels a finding that *Free Beacon*'s use of the AOC photograph is not transformative. [Dkt. No. 18] at 11. In Warhol, photographer Lynn Goldsmith took photographs of the entertainer Prince and subsequently licensed them to magazines to accompany stories about the musician. 598 U.S. at 516–17. Andy Warhol ("Warhol") created a

13

derivative work of one of Goldsmith's photographs, dubbed "Orange Prince." Id. at 518–19.

The Andy Warhol Foundation then licensed Orange Prince to a magazine for the cover of its

commemorative edition about Prince. Id. at 519–20. The Supreme Court held that, although

Orange Prince added new expression to the original photo, the magazine's use of Orange Prince

was not transformative because the purpose of both works was to illustrate stories about Prince.

Id. at 534–36, 540–41.




*One of Goldsmith's photographs of Price.*                     *Warhol's Orange Prince.*

Korman also points to Philpot v. Independent Journal Review, 92 F.4th 252 (4th Cir.

2024), in support of his claim that *Free Beacon*'s use of his photograph was not transformative.

[Dkt. No. 18] at 10–12. The plaintiff in Philpot, who was a concert photographer, took a

photograph of Ted Nugent performing during a concert. Id. at 256. The Independent Journal

Review subsequently published an article titled "15 Signs Your Daddy Was a Conservative." Id.

The fifth sign—"He hearts 'The Nuge'"—featured Philpot's photograph of Nugent. Id. The Fourth Circuit found that the website's use of Philpot's photograph was not transformative because both the original and website's use of the photograph were intended to depict the musician, and the website "did not add new purpose or meaning." Id. at 258–60.

Neither Warhol nor Philpot mirrors the facts at issue here because Korman's photograph and *Free Beacon*'s use of the original work do not serve the same purposes. *Free Beacon* was not using the image of AOC to depict AOC, nor was it using the photograph to portray AOC in a positive light or to facilitate her political campaign. Rather, *Free Beacon* used the photograph as part of its criticism of AOC's politics, focusing on the hypocrisy of claiming to be one of the common folk but actually being an elitist. In this sense, *Free Beacon*'s use of Korman's photograph most closely follows the Campbell's soup hypothetical discussed in Warhol. In the 1960s, Warhol produced the series of paintings shown below depicting Campbell's soup cans:



As the Warhol Court explained, although Warhol's artwork replicates a copyrighted logo, his use of the copyrighted material did "not supersede the objects of the advertising logo" because "[t]he

15

purpose of Campbell's logo [was] to advertise soup," whereas "Warhol's canvases . . . use[d] Campbell's copyrighted work for an artistic commentary on consumerism, a purpose that is orthogonal to advertising soup." 598 U.S. at 539. Similarly, because *Free Beacon*'s use of the AOC photograph is orthogonal to the photograph's original purpose, *Free Beacon*'s use of Korman's photograph was transformative.

The Court must also consider whether the use at issue was commercial in nature. Philpot, 92 F.4th at 260. Although a commercial purpose "may weigh against a finding of fair use," Campbell, 510 U.S. at 579, the Supreme Cout has cautioned against overemphasizing the significance of this consideration: "If, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities 'are generally conducted for profit in this country,'" id. at 584 (quoting Harper & Row, 471 U.S. at 592 (Brennan, J., dissenting)). Put differently, "[v]ast numbers of fair uses occur in the course of commercial ventures," and an "overbroad reading of the commercial sub-prong would . . . eviscerate the concept of fair use." Bouchat II, 737 F.3d at 941. To avoid that result, the Fourth Circuit has adopted the following approach: Where the allegedly infringing use is a "direct substitute" for the copyrighted work, "the commerciality inquiry is most significant." Id. But where the new work is "substantially transformative," its commercial nature is "largely insignificant." Id. at 942; see Warhol, 598 U.S. at 538 (noting that "a use's transformativeness may outweigh its commercial character").

*Free Beacon* argues that its use of Korman's photograph was not commercial because *Free Beacon* is "privately owned," "does not . . . offer paid subscriptions," and does not hide its articles behind a paywall. [Dkt. No. 13] at 12. *Free Beacon* also argues that Korman has not

16

made a single, non-conclusory allegation about the commercial purpose of its use of the copyrighted material. Id. Korman offers two points in response. First, he asserts that "there is no requirement that a plaintiff plead an exception to an affirmative defense." [Dkt. No. 18] at 14. Second, he contends that *Free Beacon*'s website is "clearly monetized in that it hosts paid advertising." Id.

Although Korman is correct that a plaintiff "need not plead facts in [his] complaint that disprove fair use," Garner, 2015 WL 574352, at *3 (emphasis in original), *Free Beacon*'s arguments as to commerciality win the day. Several courts have held that a website's use of a copyrighted work is not commercial in nature where the website does not charge for access to its articles. See Dhillon, 2014 WL 722592, at *4 (finding "no evidence" that a website's use of a photograph was commercial in nature given that the website "[d]id not sell anything" and "d[id] not charge anything to view any part of the site"); Philpot, 279 F. Supp. 3d at 718 (concluding that a website's use of an image was minimally commercial because the "defendant's articles were available for free to anyone accessing the Internet"). Moreover, "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." Philpot, 92 F.4th at 260 (citation omitted). Although Korman argues that *Free Beacon*'s website is "monetized in that it hosts paid advertising," [Dkt. No. 18] at 14, he has not explained how *Free Beacon*'s advertisement-related profits are related to its alleged exploitation of Korman's work. Therefore, any minimal commercial purpose achieved by *Free Beacon*'s use of Korman's photograph does not defeat the transformative nature of the new use.

B.

The second fair use factor focuses on "the nature of the copyrighted work." 17 U.S.C. § 107(2). The parties' arguments regarding this factor are minimal, and the case law demonstrates that this factor does not weigh in favor of either party for two reasons. As an initial matter, "the second factor may be of limited usefulness" where the work "is being used for a transformative purpose." Bouchat v. Balt. Ravens Ltd. P'ship, 619 F.3d 301, 315 (4th Cir. 2010) (Bouchat IV) (citation omitted). Because the Court has found that *Free Beacon* used Korman's photograph in a transformative manner—namely, to criticize AOC's politics—this factor is largely insignificant.

Moreover, this factor is typically neutral where the photograph at issue is both creative and factual. According to the Supreme Court, "fair use is more likely to be found in factual works than in fictional works," and a "use is less likely to be deemed fair when the copyrighted work is a creative product." Stewart v. Abend, 495 U.S. 207, 237 (1990) (cleaned up). Korman's photograph of AOC is both factual and creative. It is creative insofar as Korman "personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image." Compl. ¶ 16; see Philpot, 92 F.4th at 261 (stating that one must make "several creative choices" in capturing an image). And it is factual insofar as the photograph accurately depicts AOC. See Philpot, 279 F. Supp. 3d at 718 (noting that the photographs of Kenny Chesney and Kid Rock were factual depictions of "the celebrities in concert"); Dhillon, 2014 WL 722592, at *5 (holding that a "headshot photo was intended to be more informational than creative"). Because the factual nature of the photograph weighs in favor of finding fair use, and the creative nature of the photograph weighs against a finding of fair use, the second factor is neutral. Accord Philpot, 279 F. Supp. 3d at 718; Núñez, 235 F.3d at

18

23 (emphasizing the "difficulty of characterizing the 'nature' of the photographs" because, although "photography is an art form that requires a significant amount of skill," the photographs were intended to "highlight Giraud's abilities as a potential model"). For these reasons, the Court has found that the second factor does not weigh in favor of either party.

C.

The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). As an initial matter, *Free Beacon*'s argument that it used only a cut-out of Korman's photograph, [Dkt. No. 13] at 14, is unpersuasive because cropping out the negative space in a photograph still leaves the "heart of the work" untouched. Philpot, 92 F.4th at 261 (cleaned up). Nonetheless, *Free Beacon*'s copying of the heart of Korman's work "does not preclude" a finding of fair use. Bouchat II, 737 F.3d at 943 (citation omitted). Rather, where the transformative purpose of the new work cannot be achieved without copying a substantial portion of the original work, the third fair use factor does not weigh in favor of either party. Id. (explaining that the alleged infringer "had no choice but to film the whole [original work] in order to fulfill its legitimate transformative purpose"); Núñez, 235 F.3d at 24 ("In this case, [the newspaper] admittedly copied the entire picture; however, to copy any less than that would have made the picture useless to the story."). In sum, the third factor, like the second factor, is neutral.

D.

The fourth and final fair use factor evaluates "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). In analyzing this factor, courts consider "not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in

19

by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." Campbell, 510 U.S. at 590 (citation omitted). Simply put, the fourth factor is "concerned with secondary uses that, by offering a substitute for the original, usurp the market that properly belongs to the copyright holder." Núñez, 235 F.3d at 24 (citation omitted).

*Free Beacon* advances three arguments in support of its position that the alleged copying has not resulted in, and will not result in, market usurpation. First, *Free Beacon* claims that there is no market harm because Korman did not observe the allegedly infringing image—which was published on August 3, 2021—until May 29, 2025. [Dkt. No. 13] at 15 (citing Compl. ¶¶ 27, 30). According to *Free Beacon*, if its use of the photograph had caused a reduction in licensure activity, Korman would have discovered the infringement earlier and would have been able to allege more specific economic harms. Id. Second, *Free Beacon* claims that its use of Korman's photograph has not caused, and will not cause, market harm because a third party cannot easily copy Korman's image from *Free Beacon*'s collage; rather, to obtain the embedded image of AOC, a third-party would have to save the collage, crop out the depiction of AOC, and separately save that portion. Id. Due to the difficult nature of extracting Korman's photograph from the collage, *Free Beacon* believes that no one looking to depict AOC would turn to its collage for AOC's image. Third, *Free Beacon* contends that there is no market harm because "[t]here is little to no overlap in the audience likely to seek out [Korman's] Photograph for licensing and the readers of [*Free Beacon*], who are primarily conservative and generally disagree with the politics of [AOC]." Id. at 16.

Korman responds in two ways. First, he correctly observes that "there is no evidence about relevant markets" at this stage of the litigation. [Dkt. No. 18] at 17. Second, Korman argues that *Free Beacon*'s assertion as to the difficulty of extracting the image of AOC from the

20

collage "misses the mark because it does not answer the question of 'what if everybody else did it?'" Id. at 16. According to Korman, "[i]f anyone could copy [his] Photograph and claim lack of market harm because it removed the null background from the original, Plaintiff would lose all rights to his copyright protected Photograph." Id.

Korman's response fails for several reasons. As an initial matter, he did not respond to *Free Beacon*'s argument regarding his late discovery of the alleged infringement. Of course, Korman is not required to plead facts in the Complaint to negate fair use, Garner, 2015 WL 574352, at *3; however, *Free Beacon*'s argument raises a concern that any market harm that might have occurred is de minimis given that Korman did not discover the alleged infringement for 45 months. Additionally, *Free Beacon*'s alleged infringement poses a minimal risk of market usurpation because the collage featuring AOC's image serves a different market function than Korman's professional photograph. "When the 'use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred.'" Bouchat IV, 619 F.3d at 315 (quoting Campbell, 510 U.S. at 591). As explained above, *Free Beacon*'s use of the photograph is transformative because the photograph is part and parcel of *Free Beacon*'s criticism of AOC—a use which Korman did not have in mind when he captured the image. Moreover, as *Free Beacon* persuasively argues, its consumers are unlikely to be the same individuals seeking a license to use Korman's photograph. Accord Galvin v. Ill. Republican Party, 130 F. Supp. 3d 1187, 1196 (N.D. Ill. 2015) (holding that the fourth factor weighs in favor of fair use because "the two works . . . cater to wholly different audiences"); Hughes v. Benjamin, 437 F. Supp. 3d 382, 394 (S.D.N.Y. 2020) (finding no danger of market usurpation because the defendant's target audience, "political conservatives and libertarians" "is obviously

not the same as" the plaintiff's target audience, "political liberals"). For these reasons, the Court has concluded that the fourth fair use factor weighs in favor of *Free Beacon.*

E.

The final stage of the analysis requires courts to confirm that their evaluation of the four fair use factors comports with the "purposes of copyright." Bouchat II, 737 F.3d at 937, 943–45 (quoting Campbell, 510 U.S. at 578). As explained above, the first and fourth § 107 factors counsel in favor of fair use, and the second and third factors are largely neutral. Consequently, in the aggregate, the four factors support the conclusion that *Free Beacon*'s use of Korman's photograph qualifies as fair use.

This conclusion "is confirmed by the Supreme Court's explication of the underlying interests that inform copyright law and its relationship to the First Amendment." Bouchat II, 737 F.3d at 943–44. The copyright laws are "intended to motivate the creative activity of authors and inventors by the provision of a special reward." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 429 (1984). Although copyright law rewards the owner with a monopoly over the use of the work, the "sole interest of the United States and the primary object in conferring the monopoly lie in the general benefits derived by the public from the labors of authors." Id. (quoting Fox Film Corp. v. Doyal, 286 U.S. 123, 127 (1932)). As a result, the Copyright Act aims "to balance the importance of encouraging authors and inventors by granting them control over their work with 'society's competing interest in the free flow of ideas, information, and commerce.'" Bouchat II, 737 F.3d at 944 (quoting Sony, 464 U.S. at 429).

The fair use exception is critical in striking this balance because it promotes "the exchange of opinions and ideas" while serving "as a necessary 'First Amendment safeguard[]'" against the dangers of constricting speech. Id. (quoting Eldred, 537 U.S. at 219). By allowing

22

"considerable latitude for scholarship and comment," the fair use doctrine prevents copyright law from impeding free expression. Eldred, 537 U.S. at 219 (cleaned up). Here, *Free Beacon*'s articles and accompanying images are paradigmatic examples of social commentary and political criticism and align with two examples in § 107's preamble: "criticism" and "comment." 17 U.S.C. § 107. Imposing a requirement on journalists to receive permission from, and pay royalties to, copyright holders to use their photographs as part of political criticism regarding the public figures depicted would frustrate the balance Congress struck between robust copyright protections and the free flow of ideas. After all, "it should not be forgotten that the Framers intended copyright itself to be the engine of free expression." Harper & Row, 471 U.S. at 558. Accordingly, the Court has found that *Free Beacon*'s use of Korman's photograph was fair.

IV.

For the reasons stated in open court, as further explained in this Memorandum Opinion—and because "fair use must give speakers some reasonable leeway at the margins," Bouchat II, 737 F.3d at 944—the Court has granted *Free Beacon*'s Motion to Dismiss.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 30 day of March, 2026.

Alexandria, Virginia

_____/s/_____

Leonie M. Brinkema
United States District Judge

23